**UNITED DETROIT THEATRES CORPO-RATION v. FEDERAL COMMUNICA-TIONS COMMISSION (WXYZ, Inc., Intervenor).**

No. 10006.

United States Court of Appeals
District of Columbia Circuit.

Argued June 6, 1949.

Decided Aug. 1, 1949.

Mr. D. M. Patrick, Washington, D. C., with whom Mr. O. R. McGuire, Jr., Washington, D. C., was on the brief, for appellant. Mr. Karl A. Smith, Washington, D. C., also entered an appearance for appellant.

Miss Mary Jane Morris, Counsel, Federal Communications Commission, Washington, D. C., with whom Mr. Benedict P. Cottone, General Counsel, Mr. Max Goldman, Assistant General Counsel, and Mr. Richard A. Solomon, Counsel, Federal Communications Commission, Washington, D. C., were on the brief, for appellee.

Mr. James A. McKenna, Jr., Washington, D. C., with whom Mr. Andrew G. Haley, Washington, D. C., was on the brief, for intervenor. Mr. Vernon L. Wilkinson, Washington, D. C., also entered an appearance for intervenor.

Before CLARK, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from an order of the Federal Communications Commission, which granted an application of intervenor WXYZ, Inc., for an extension of time within which to complete construction of a television broadcast station in Detroit,

Michigan, under a previously granted permit.

Under the nationwide allocation plan for television broadcasting adopted by the Commission in 1945,[1] five channels were assigned to the Detroit area. Three applications were filed:

May 10, 1944—WXYZ, Inc.

May 13, 1944—Appellant United Detroit Theatres Corporation.

November 15, 1944—Evening News Association.

On June 11, 1946, the Commission granted the WXYZ, Inc., and Evening News Association applications. Appellant did not file a petition for reconsideration of, or take an appeal from, either of these grants. Its application was then the only pending application, and there were three channels unassigned.

On December 30, 1946, the Fort Industry Company filed an application, and on March 20, 1947, that application was granted. On July 16, 1947, the Commission amended its allocation so as to delete one channel from the Detroit area to permit its use by Canada at Windsor.[2] Thereupon appellant was the only applicant for the only remaining channel. On November 5, 1947, WJR, The Goodwill Station, Inc., refiled an application which had theretofore been withdrawn. This made two applicants for a single channel. The Commission set the two for a competitive hearing.

Thus, from May 13, 1944, when appellant filed its application, until November 5, 1947 (except for a short period), there was an available channel which could have been granted the appellant without a competitive hearing, because there were as many channels as applicants. At the same time, failure by the Commission to dispose of appellant's application finally placed the appellant in a position where it had to compete with WJR for the one remaining channel.

Deeming itself aggrieved by its treatment, appellant took two steps. It invented a form of application to the Commission, which it called a "Petition for Special Relief", and it filed a petition for a rehearing of the grant without hearing of an application by WXYZ, Inc., for an extension of the time within which to complete the construction of its station.

WXYZ, Inc., had found itself unable to complete its station within the designated six months and, within that period, applied for an extension of time. The Commission at first set this application for hearing but then, when further information was furnished, granted it on February 12, 1948, without hearing.

Section 319(b) of the Communications Act of 1934[3] provides: "Such permit for construction shall show specifically the earliest and latest dates between which the actual operation of such station is expected to begin, and shall provide that said permit will be automatically forfeited if the station is not ready for operation within the time specified or within such further time as the Commission may allow, unless prevented by causes not under the control of the grantee."

Section 3.614 of the Commission's Rules provides: "Each construction permit will specify a maximum of 60 days from the date of granting thereof as the time within which construction of the station shall begin, and a maximum of six months thereafter as the time within which construction shall be completed and the station ready for operation, unless otherwise determined by the Commission upon proper showing in any particular case."

Section 3.615(a) of the Rules provides: "A construction permit shall be automatically forfeited if the station is not ready for operation within the time specified therein or within such further time as the Commission may have allowed for completion, * * *."

■ Appellant says that as the periods allowed by the granted permits for the completion of the respective stations expired, the permits were automatically cancelled; it says that these cancellations auto-

1. 11 Fed.Reg. 34.

2. 12 Fed.Reg. 4756.

3. 48 Stat. 1089, 47 U.S.C.A. § 319(b).

matically returned the permits to the status of pending applications. It concludes that when the six months of WXYZ, Inc. (and likewise those of other grantees) expired, it became a mere applicant instead of a permittee and must, therefore, take its place in a competitive hearing with other applicants for available channels. Thus, appellant contends that the comparative consideration should be of itself, WXYZ, Inc., WJR, and any other permittee now seeking extension of construction time. We think this position untenable, The statute and the regulations permit construction not only within the six months but within any extended period granted by the Commission. The applications for extensions involved in the pending proceeding were seasonably made. The permits were, therefore, not cancelled but open for extension of the construction time.

■ We have held in KFAB Broadcasting Co. v. Federal Communications Comm.[4] that an applicant for a radio station is not aggrieved by an order granting another application, if there remain available channels to which the applicant may be assigned. Under that rule this appellant was not aggrieved by any of the orders of the Commission granting the various applications.

■ A more important phase of the problem presented by appellant arises from the failure of the Commission to act upon its application before granting later applications. The Commission cannot act arbitrarily or capriciously in respect of the precedence with which it disposes of applications, any more than it can so act in any other respect. The Commission could not arbitrarily or capriciously withhold consideration of a particular application until such time as there were pending enough applications to require a competitive hearing. We must, therefore, examine the explanation submitted by the Commission as to why it did not act upon appellant's application, filed May 13, 1944, while it was granting without hearing applications filed November 15, 1944, and December 30, 1946.

■ Section 3.640 of the Rules and Regulations of the Commission provides that five television stations shall be the maximum number permitted to any one licensee. Control of appellant is owned by Paramount Pictures, Inc. From November, 1945, and continuing throughout the period here involved, the Commission had under way numerous investigations and proceedings seeking to determine which of numerous applicants for television station permits in Hollywood, Passaic, Dallas, Cincinnati, San Francisco, Boston, Pittsburgh, and Chicago were subsidiaries of Paramount Pictures, Inc., and which five of these applications the controlling owner wished to prefer. On October 15, 1947, pursuant to a request of Paramount, the Commission set for hearing and decision the whole matter of these subsidiaries, their applications, and the grant of not more than five of them to licensees controlled by the one corporation. We need not recite the details of all those proceedings; they appear in the record. Suffice it to say that we think the delay in the disposition of appellant's application was amply justified by these other problems with which the Commission was struggling and in which appellant was an interested participant. We conclude that the failure of the Commission to consider appellant's application in its normal routine turn was not arbitrary or capricious but was within permissive administrative discretion.

The order of the Commission denying appellant's petition is

Affirmed.

4. 1949, ——, U.S.App.D.C., ——, 177 F.2d 40.